IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Mercedes Vazquez Vazquez and Jose Enrique Diaz Vazquez,<br><br>Plaintiffs,<br><br>v.<br><br>Hospital Hermanos Melendez, Inc., et al.,<br><br>Defendants. | **Civil No. 20-1387 (GMM)** |

**OPINION AND ORDER**

Before the Court is Defendant Dr. Jesús R. Amparo Flores' ("Dr. Amparo Flores" or "Defendant") *Motion Requesting Summary Judgment* ("Motion for Summary Judgment"). (Docket No. 241). For following reasons, the Court **DENIES** the Motion for Summary Judgment.

I.   **RELEVANT BACKGROUND**

A.   Underlying Factual Background[1]

On May 3, 2017, Mrs. Mercedes Vázquez Vázquez ("Mrs. Vázquez"), referred by (and only by) Dr. Rafael Torrellas Ruíz ("Dr. Torrellas"), was admitted to the Hospital Hermanos Meléndez

---

[1] The factual allegations in the *Complaint* (Docket No. 1) are taken as true for purposes of this Motion for Summary Judgment.

("Hospital") with a diagnosis of colectomy[2] and a hernia on the left side of the abdomen. (Docket No. 1 at 5, ¶ 16).

According to Mrs. Vázquez and her son José Enrique Díaz Vázquez ("Mr. Díaz Vázquez") (together, "Plaintiffs"), the purpose of Mrs. Vázquez's admission to the Hospital was to receive hernia repair surgery. (Id. at 5, ¶ 17). That same day, Dr. Torrellas and other medical and nursing staff at the Hospital conducted the surgery. (Id. at 5, ¶ 18).

Allegedly, due to the fault or negligence of defendants, the operated area became infected, and Mrs. Vázquez developed an abdominal abscess. (Id. at 5, ¶ 19). Consequently, Mrs. Vázquez underwent emergency surgeries on May 17, 2017, and on May 23, 2017. (Id. at 5, ¶ 20). The surgeries were conducted by some of the defendant doctors and by the Hospital's medical and nursing staff. (Id.).

On May 26, 2017, Mrs. Vázquez's surgical wound opened and fecal matter was drained from it. (Docket No. 1 at 5, ¶ 21). The drainage created a fistula that prevented a necessary surgical intervention. (Id.). Mrs. Vázquez was placed on intravenous feeding for two (2) weeks. (Id.). On June 21, 2017, Mrs. Vázquez underwent surgery –for the fourth time– so that a central line for

---

[2] Although the Plaintiffs alleged that Mrs. Vázquez was diagnosed with colectomy, the Court recognizes that a colectomy is a surgical procedure and not a condition.

feeding could be placed. (Id. at 5, ¶ 22). At this time, Mrs. Vázquez's health was deteriorating, and she was showing lapses of unconsciousness. (Id.).

On June 25, 2017, a CT-scan of the brain revealed signs of encephalopathy. (Id. at 5-6, ¶ 23). The Hospital and the defendant doctors did not refer the patient to a neurologist. (Docket No. 1 at 6, ¶ 23).

Mrs. Vázquez remained hospitalized at Hospital Hermanos Meléndez until July 3, 2017. (Id. at 6, ¶ 24). Allegedly, throughout her hospitalization she was in critical condition due to the negligence and the all the defendants' deviations from the standards of medical care. (Id.).

On July 3, 2017, Mrs. Vázquez was transferred to the Puerto Rico Medical Center in emergency condition. (Id. at 6, ¶ 25). There, she was admitted with a diagnosis of "Wernicke's Encephalopathy." (Id. at 6, ¶ 26). Plaintiffs argue that her condition was a result of all the defendants' negligence and/or deviations from the standards of medical care. (Id.).

Mrs. Vázquez was discharged from the Puerto Rico Medical Center on August 16, 2017. (Docket No. 1 at 6, ¶ 26). Due to her defendants' alleged negligence, She now reports that she suffers from a plethora of medical complications which limit her basic daily functions. (Id. at 6-7, ¶¶ 27-28).

Based on the foregoing, on May 3, 2018, Plaintiffs filed a complaint, BY2018CV00177, before the Puerto Rico Court of First Instance of Bayamón ("State Court Complaint"). (Docket No. 45-1). Dr. Amparo Flores' full and correct name was not included in that complaint. (*See generally* Id.). Instead, Plaintiffs opted to utilize a partially fictitious name. (Id. at 2, ¶ 4). On August 9, 2019, before Plaintiffs could amend the State Court Complaint to include Dr. Amparo Flores' full and correct name, the Bayamón Superior Court dismissed the State Court Complaint without prejudice. (Docket No. 52-1).

B.   Procedural Background of this Case

On August 5, 2020, Plaintiffs sued Bayamón Medical Center Corp. d/b/a the Bayamón Medical Center;[3] Dr. Torrellas; Dr. Sandra N. Maldonado ("Dr. Maldonado"); Dr. Amparo Flores; Dr. John Doe Vázquez ("Dr. Vázquez"), Dr. Vázquez's wife Jane Doe I, and the conjugal partnership between them; Dr. John Doe Ramírez ("Dr. Ramírez"), Dr. Ramírez's wife Jane Doe II, and the conjugal partnership between them; Dr. Salvador Mercado Mercado ("Dr. Mercado"), Dr. Mercado's wife Jane Doe III, and the conjugal partnership between them; Dr. John Doe Villamil ("Dr. Villamil"),

---

[3] The Corporate entity which had been known as Hospital Hermanos Meléndez, Inc. changed its corporate name to Bayamón Medical Center Corp. The hospital previously known as Hospital Hermanos Meléndez is now known as the Bayamón Medical Center. (Docket No. 11 at 2, ¶ 6). Because the Hospital was named Hospital Hermanos Meléndez during the time the facts of the Complaint occurred, the Court will refer to the hospital as such.

**Civil No. 20-1387(GMM)**
**Page -5-**

his wife Jane Doe IV, and the conjugal partnership between them; and other unknown John Does, corporations, and insurance companies. (Docket No. 1 at 2-4).

Plaintiffs claim violations to 31 P.R. Laws Ann. §§ 5141-5142.[4] In sum, they allege that the Hospital and its personnel, including Dr. Amparo Flores, breached their duty of complying with the applicable standards of medical care when treating Mrs. Vázquez. Such breach caused brain damage and physical damage to Mrs. Vázquez's person. (Docket No. 1 at 6-7, ¶ 27). Dr. Amparo Flores denies any fault or negligence. (Docket No. 38).

On October 3, 2022, Dr. Amparo Flores filed a Motion for Summary Judgment alleging that the cause of action against him is time-barred. (Docket No. 241). According to Dr. Amparo Flores, the applicable statute of limitations has run as to him since the Complaint was filed three years after Mrs. Vázquez's hospitalization. (Id. at 11). Dr. Amparo Flores further argued that the State Court Complaint could not have tolled the applicable statute of limitations as to him since he was not included in it. (Id.).

---

[4] This citation corresponds to the 1930 Puerto Rico Civil Code. The 1930 Puerto Rico Civil Code was abrogated by 31 P.R. Laws Ann. § 5311 et seq. ("2020 Puerto Rico Civil Code"). However, the 2020 Puerto Rico Civil Code provides that tort liability is governed by the law in force at the time when the act or omission that gave rise to the tort liability took place. See 31 P.R. Laws Ann. § 11720. The 1930 Puerto Rico Civil Code was in force when the events that gave rise to this malpractice case took place.

On November 1, 2022, Plaintiffs filed a *Memorandum of Law Opposing Defendants' Motions for Summary Judgment (Docket Nos. 239, 241 & 242)*. (Docket No. 256). Plaintiffs contend that they included Dr. Amparo Flores in the State Court Complaint. (Id. at 2). Indeed, they used the partially fictitious name "Dr. John Doe Flores." (Id.). Regardless, Plaintiffs argue that Dr. Amparo Flores is in perfect solidarity with the other joint tortfeasors identified in the State Court Complaint. As such, the timely filing of the State Court Complaint, tolled the statute of limitations as to him as well. (Id. at 9).

## II. SUMMARY JUDGMENT STANDARD

### A. Fed. R. Civ. P. 56

Fed. R. Civ. P. 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute in a material fact "if the evidence 'is such that a reasonable jury could resolve the point in favor of the non-moving party.'" Taite v. Bridgewater State University, Board of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (*quoting* Ellis v. Fidelity Management Trust Company, 883 F.3d 1, 7 (1st Cir. 2018)). In turn, a fact is material "if it 'has the potential of affecting the outcome of the case.'" Id. (*quoting* Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)). In making

its determination, the Court will look to "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." Johnson v. University of Puerto Rico, 714 F.3d 48, 52 (1st Cir. 2013) (*citing* Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)).

The movant has "the initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact' with definite and competent evidence." Arroyo-Ruiz v. Triple-S Management Group, 258 F.Supp.3d 240, 245 (D.P.R. 2017) (*quoting* Campos v. Van Ness, 711 F.3d 243, 247-48 (1st Cir. 2013)). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)). Indeed, the non-movant is required to "present definite, competent evidence to rebut the motion." Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (*quoting* Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

Further, the Court must "draw [] all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013). The Court must

also refrain from assessing the credibility or weight of the evidence presented. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Facts which are properly supported "shall be deemed admitted unless properly controverted" and the Court is free to ignore such facts that are not properly supported. Local Civ. R. 56(e); Rodríguez-Severino v. UTC Aerospace Sys., No. 20-1901, 2022 WL 15234457, at *5 (1st Cir. Oct. 27, 2022).

B.   Local Civ. R. 56

Local Civ. R. 56 also controls motions for summary judgment. *See* Local Civ. R. 56. In sum, it requires the non-movant to "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civ. R. 56(c). If the fact is not admitted, "the opposing statement shall support each denial or qualification by a record citation. . ." Id. In its opposing statement, the non-movant can include additional facts supported by record citations. *See* Id. In turn, the movant "shall submit with its reply a separate, short, and concise statement of material facts, which shall be limited to any additional fact submitted by the opposing party." Local Civ. R. 56(d). In its statement, the movant shall admit, deny, or qualify those

additional facts. *See* Id. Any denial and qualification that the movant raises must be supported by a record citation. *See* Id.

Failure to comply with Local Rule 56(c) gives the Court the ability to accept a party's proposed facts as stated. *See* López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023); *see also* Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted."). Litigants ignore Local Rule 56(c) at their peril. *See* López-Hernández, 64 F.4th at 26.

### III. FINDINGS OF FACT

The Court examined Defendant's *Statement of Uncontested Material Facts* (Docket No. 241-1) and *Plaintiff's Opposing Statement of Material Facts with Respect to Statement of Uncontested Material Facts at Docket No. 241-1*. (Docket No. 258). The Courts only credits material facts properly supported by a record citation.

Accordingly, the Court makes the following findings of fact:

1. Mrs. Vázquez was hospitalized from May 3, 2017 to July 3, 2017 at the Hospital. (Docket No. 258 at 1-2, ¶ 1).

2. Mr. Díaz Vázquez, Mrs. Vázquez's son, knows that Dr. Amparo Flores was the "internal medicine doctor" that oversaw Mrs. Vázquez because he interacted with him multiple times, and held at least three (3) conversations with him during Mrs. Vázquez's

    treatment at the Hospital. (Docket Nos. 258 at 2, ¶¶ 3-5; and 241-2 at 2, 5-6).

3. Mr. Díaz Vázquez testified under oath that he always went to Dr. Amparo Flores every time he came to the Hospital's Intensive Care Unit ("ICU") to talk about Mrs. Vázquez's condition. (Docket Nos. 258 at 2, ¶ 6; and 241-2 at 6).

4. On May 3, 2018, Mrs. Vázquez, Mr. Díaz Vázquez, and others, filed the State Court Complaint claiming damages suffered based upon Mrs. Vázquez's hospitalization at the Hospital. (Docket Nos. 258 at 3, ¶ 7; and 45-1).

5. Dr. Amparo Flores' full and correct name was not included in the State Court Complaint. (Docket No. 48-1). Instead, the plaintiffs in the State Court Complaint used the partially fictitious name: "Dr. John Doe Flores." (Id. at 2, ¶ 4).

6. On August 9, 2019, before Plaintiffs could amend the State Court Complaint to include Dr. Amparo Flores' full and correct name, the Bayamón Superior Court dismissed the State Court Complaint without prejudice. (Docket No. 52-1).

7. On August 5, 2020, three years after Mrs. Vázquez's hospitalization, she and Mr. Díaz Vázquez filed their Complaint before federal court. (Docket No. 1).

8. In the Complaint before federal court, Plaintiffs included Dr. Amparo Flores' full and complete name. (Docket No. 1 at 3 ¶ 9).

## IV. APPLICABLE LAW

This is a diversity action. As such, Puerto Rico substantive law applies since. See Roja-Ithier v. Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico, 94 F.3d 40, 43 (1st Cir. 2005) (citing Erie R.R. Co. V. Tompkins, 304 U.S. 64, 92 (1938)).

A. <u>Personal Liability, the Doctrine of Apparent Agency</u>, and Corporate Responsibility

Puerto Rico law provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 P.R. Laws Ann. § 5141. This legal mandate is not limited to a person's own acts. 31 P.R. Laws Ann. § 5142 decrees that the liability imposed by § 5141 "is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible." 31 P.R. Laws Ann. § 5142.

In this sense, Puerto Rico's apparent or ostensible agency doctrine provides that "hospitals and physicians are directly and jointly liable to a victim of malpractice when [the victim] goes directly to a hospital for medical treatment and the hospital 'provides' the physicians who treat him." <u>Suero-Algarín v. CMT Hospital Hima San Pablo Caguas</u>, 957 F.3d 30, 38 (1st Cir. 2020) (*quoting* <u>Márquez-Vega v. Martínez Rosado</u>, 116 D.P.R. 397, 16 P.R. Offic. Trans. 487, 497 (1985)) (Internal quotations omitted); *see also* <u>Fonseca v. Hosp. HIMA</u>, 184 D.P.R. 281 (2012) (stating that Puerto Rico's apparent or ostensible agency doctrine dictates that a hospital is jointly and severally liable for a physician's malpractice if the hospital assigned that physician to the patient). This situation differs from instances when "a person goes directly to a physician's private office, agrees with him as

to the treatment he or she is going to receive, and goes to a given hospital on the physician's recommendation merely because said institution is one of several which the physician has the privilege of using. . ." Id. (quoting Márquez-Vega, 16 P.R. Offic. Trans. at 497). The key, thus, is "pinpointing who did the patient—first and foremost—entrust with his health: the hospital or the physician." Márquez-Vega, 16 P.R. Offic. Trans. at 496. "[I]t makes no difference whether the attending physician is a hospital employee or not." Id. 16 P.R. Offic. Trans. at 497.

Generally, in cases in which the patient entrusted his or her health to a physician who possessed the privilege of using a hospital's facilities, "the hospital should not be held liable for the exclusive negligence of an unsalaried physician." Márquez-Vega, 16 P.R. Offic. Trans. at 499). This is so because the main relationship is between the patient and the physician, "while the relationship established between the patient and the hospital is of a supplementary and incidental nature." Id. However, under this framework, a hospital is not without responsibility. Indeed

> public policy dictates that even in this type of situation [a] hospital has the *continuous obligation to protect the health of* its patients by: (a) carefully selecting the physicians who, for some reason or another, are granted the privilege of using its facilities. . .(b) requiring that said physicians keep up-to-date through professional advancement studies. . .(c) monitoring the labor of said physicians and taking action, when possible, in the face of an obvious act of malpractice. . .(d) discontinuing the privilege granted in the face of the repeated or crass acts of malpractice

> on the part of one of those physicians. . .and (e) keeping reasonably up-to-date on current technological breakthroughs.

Id. 16 P.R. Offic. Trans. At 500.

B. <u>Perfect and Imperfect Solidarity – Plurality of Joint Tortfeasors</u>

As it pertains to tort liability, solidarity is the rule. When the damage is caused by two or more persons, "all joint tortfeasors are liable to the plaintiff for the damage sustained by the latter." <u>Szendrey v. Hospicare, Inc.</u>, 158 D.P.R. 648, 654, --- P.R. Offic. Trans. --- (2003). Thus, joint tortfeasors are "on the hook" for the totality of the damages sustained by the plaintiff regardless of their respective degree of negligence. However, Puerto Rico law recognizes the right of contribution between joint tortfeasors, which allows a tortfeasor "who has paid more than his or her share to claim from the other [co-tortfeasors] their respective shares." <u>Id.</u>

Furthermore, Puerto Rico law distinguishes between perfect and imperfect solidarity. Perfect solidarity occurs "between several persons joined by a common interest, which have frequent relations among themselves or know each other." <u>Ramírez v. Corporación del Centro Cardiovascular de Puerto Rico y del Caribe</u>, 994 F.Supp.2d 218, 223 (D.P.R. 2014) (*quoting an English translation of* <u>Fraguada Bonilla v. Hosp. Aux. Mutuo</u>, 186 D.P.R. 365 (2012)). Imperfect solidarity, on the other hand, occurs "when it is established by law between persons who do not know each

other, who are merely accidental co-debtors or when their relations are sporadic." Id.

C.   Statute of Limitations

Perhaps the most important implication of the distinction between perfect and imperfect solidarity is how the statute of limitations is tolled and against whom it is tolled. Tort claims under Articles 1802 and 1803 of the 1930 Puerto Rico Civil Code carry a statute of limitations of one year. *See* 31 P.R. Laws Ann. § 5298(2). The one-year term begins to run "once the injured party knows both that he has suffered a harm and who is responsible for it." Rodríguez v. Suzuki Motor Corp., 570 F.3d 402, 206 (1st Cir. 2009) (*citing* García Pérez v. Corporación de Servicios para la Mujer y la Familia, etc., 2008 TSPR 114, 2008 WL 2717833, at *4 (P.R. June 30, 2008)). Article 1874 of the 1930 Puerto Rico Civil Code decrees that the "[i]nterruption of prescription of action in [solidary] obligations equally benefits or injures all the creditors or debtors." 31 P.R. Laws Ann. § 5304. In the case of perfect solidarity, the tolling of the action as to one co-tortfeasor, tolls the action as to all co-tortfeasors.

Article 1874 of the 1930 Puerto Rico Civil Code is not applicable where imperfect solidarity is found. In those cases, "the aggrieved person will have to interrupt the prescriptive term individually with respect to each co-[tortfeasor], since the interruption of the prescription in the [imperfect] solidarity

does not equally affect or harm all of the [tortfeasors]." Pérez Hernández v. Lares Medical Center, Inc., 207 D.P.R. 965, 980 (2021) (certified English translation at Docket No. 86-1 at 13). If the injured party's claim against a certain co-tortfeasor has expired, then the right of the injured party to claim liability from that co-tortfeasor ceases and "the obligation for the other co-[tortfeasors] to respond for the former's part in the damages also ceases." Tonge v. Doctors' Center Hospital, 531 F.Supp.3d 491, 505 (D.P.R. 2021) (*quoting a certified English translation of* Maldonado Rivera v. Suárez*,* 195 D.P.R. 182, 209 (2016)). In which case, the court must deduct the percentage of negligence, or responsibility, of the extinguished co-tortfeasor. *See* Calderón Amézquita v. Rivera Cruz, Civil No. 17-2197, 2022 WL 458735, at *1 (D.P.R. Feb. 15, 2022) ("[E]ven if the plaintiff ultimately prevails, because they are at fault for failing to file a timely claim against the non-defendant tortfeasor, the portion of liability attributable to the non-defendant tortfeasor will be deducted from the total compensation available for them.").

## V.   ANALYSIS AND CONCLUSION

On May 3, 2017, Mrs. Vázquez, was admitted to the Hospital. The purpose of her admission was for operation on the hernia. She was referred by (and only by) Dr. Torrellas.

Dr. Torrellas' performed the surgery. The area, however, became infected. To treat the infection, Mrs. Vázquez underwent

emergency operations on May 17, 2017, and May 23, 2017. The May 2017 operations were performed by some of the defendant doctors and by the medical and nursing staff of the Hospital. On June 21, 2017, Mrs. Vázquez underwent surgery again. On July 3, 2017 she was transferred to the Puerto Rico Medical Center in an emergency condition. Throughout this time, Dr. Amparo Flores was one of the physicians who oversaw Mrs. Vázquez's care.

At the relevant times, Mrs. Vázquez was not Dr. Amparo Flores' private patient. Indeed, Dr. Amparo Flores was assigned by the Hospital to treat Mrs. Vázquez. Thus, the relationship between Mrs. Vázquez and Dr. Amparo Flores is incidental, and Mrs. Vázquez entrusted her health and well-being to the Hospital. Moreover, Dr. Amparo Flores and the Hospital are in perfect solidarity and are jointly and severally liable for Dr. Amparo Flores's negligence and malpractice.

Based on the foregoing, the Court must conclude that when Plaintiffs filed the State Court Complaint against the Hospital on May 3, 2018, it tolled the statute of limitations against Dr. Amparo Flores. *See* 31 P.R. Laws Ann. § 5304 ("Interruption of prescription of action in [solidary] obligations equally benefits or injures all the creditors or debtors."). The State Court Complaint was dismissed on August 9, 2019, and Plaintiffs timely filed this Complaint on August 5, 2020. As such, the cause of

**Civil No. 20-1387(GMM)**
**Page -17-**

action against Dr. Amparo Flores for his alleged malpractice is not time-barred.

The Court DENIES Dr. Amparo Flores's Motion for Summary Judgment at Docket No. 241.

IT IS SO ORDERED.

In San Juan, Puerto Rico, September 20, 2023.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE
