IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Mercedes Vazquez Vazquez and Jose Enrique Diaz Vazquez,<br><br>Plaintiffs,<br><br>v.<br><br>Hospital Hermanos Melendez, Inc., et al.,<br><br>Defendants. | **Civil No. 20-1387 (GMM)** |

**OPINION AND ORDER**

Before the Court are Defendants Dr. José R. Villamil's ("Dr. Villamil") and Dr. Jesús R. Amparo Flores' ("Dr. Amparo Flores") (collectively, "Defendants") respective motions for summary judgment. (Docket Nos. 239 and 242). Both are pending adjudication. The Court **DENIES** Defendants' requests for summary judgment.

**I.   RELEVANT BACKGROUND**

A.  Underlying Factual Background[1]

On May 3, 2017, Mrs. Mercedes Vázquez Vázquez ("Mrs. Vázquez"), referred by (and only by) Dr. Rafael Torrellas Ruiz ("Dr. Torrellas"), was admitted to the Hospital Hermanos Meléndez

---

[1] The factual allegations in the *Complaint* (Docket No. 1) are taken as true for purposes of this Motion for Summary Judgment.

("Hospital") with a diagnosis of colectomy[2] and a hernia on the left side of the abdomen. (Docket No. 1 at 5, ¶ 16).

According to Mrs. Vázquez and her son José Enrique Díaz Vázquez ("Mr. Díaz-Vázquez") (together, "Plaintiffs"), the purpose of Mrs. Vázquez's admission to the Hospital was to receive hernia repair surgery. (Id. at 5, ¶ 17). That same day, Dr. Torrellas and other medical and nursing staff at the Hospital conducted the surgery. (Id. at 5, ¶ 18).

Allegedly, due to the fault or negligence of unspecified defendants, the surgical site became infected, and Mrs. Vázquez developed an abdominal abscess. (Id. at 5, ¶ 19). Consequently, Mrs. Vázquez underwent emergency surgeries on May 17, 2017, and on May 23, 2017. (Id. at 5, ¶ 20). The surgeries were conducted by some of the defendant doctors and by the Hospital's medical and nursing staff. (Id.).

On May 26, 2017, Mrs. Vázquez's surgical wound opened and fecal matter drained from it. (Docket No. 1 at 5, ¶ 21). The drainage created a fistula that prevented medical professionals from performing a necessary surgical intervention. (Id.). Mrs. Vázquez was placed on intravenous feeding for two (2) weeks. (Id.). On June 21, 2017, Mrs. Vázquez underwent surgery –for the fourth

---

[2] Although the Plaintiffs alleged that Mrs. Vázquez was diagnosed with colectomy, the Court recognizes that a colectomy is a surgical procedure and not a condition.

time– to place a central line for feeding. (Id. at 5, ¶ 22). At this time, Mrs. Vázquez's health was deteriorating, and she was experiencing lapses of unconsciousness. (Id.).

On June 25, 2017, a CT-scan of Mrs. Vázquez's brain revealed signs of encephalopathy. (Id. at 5-6, ¶ 23). The Hospital and the defendant doctors did not refer the patient to a neurologist. (Docket No. 1 at 6, ¶ 23).

Mrs. Vázquez remained hospitalized at Hospital Hermanos Meléndez until July 3, 2017. (Id. at 6, ¶ 24). Allegedly, throughout her hospitalization she was in critical condition due to all of the named defendants' negligence and the deviations from the standards of medical care. (Id.).

On July 3, 2017, Mrs. Vázquez was transferred to the Puerto Rico Medical Center in emergency condition. (Id. at 6, ¶ 25). There, she was admitted with a diagnosis of "Wernicke's Encephalopathy." (Id. at 6, ¶ 26). Plaintiffs argue that her condition was the result of all the named defendants' negligence and/or deviations from the standards of medical care. (Id.).

Mrs. Vázquez was discharged from the Puerto Rico Medical Center on August 16, 2017. (Docket No. 1 at 6, ¶ 26). Due to the alleged negligence of all named defendants, Mrs. Vázquez reports that she now suffers from a plethora of medical complications which limit her basic daily functions. (Id. at 6-7, ¶¶ 27-28).

Based on the foregoing, on May 3, 2018, Plaintiffs filed a complaint, BY2018CV00177, before the Puerto Rico Court of First Instance of Bayamón ("State Court Complaint"). (Docket No. 45-1). On August 9, 2019, the Bayamón Superior Court dismissed the State Court Complaint without prejudice. (Docket No. 52-1).

B.  Procedural Background of this Case

On August 5, 2020, Plaintiffs sued Bayamón Medical Center Corp. d/b/a the Bayamón Medical Center;[3] Dr. Torrellas; Dr. Sandra N. Maldonado ("Dr. Maldonado"); Dr. Amparo Flores; Dr. John Doe Vázquez ("Dr. Vázquez"), Dr. Vázquez's wife Jane Doe I, and the conjugal partnership between them; Dr. John Doe Ramírez ("Dr. Ramírez"), Dr. Ramírez's wife Jane Doe II, and the conjugal partnership between them; Dr. Salvador Mercado Mercado ("Dr. Mercado"), Dr. Mercado's wife Jane Doe III, and the conjugal partnership between them; Dr. Villamil, his wife Jane Doe IV, and the conjugal partnership between them; and other unknown John Does, corporations, and insurance companies. (Docket No. 1 at 2-4).

Plaintiffs claim violations of 31 P.R. Laws Ann. §§ 5141-5142.[4] In sum, they allege that the Hospital and its personnel,

---

[3] The Corporate entity which had been known as Hospital Hermanos Meléndez, Inc. changed its corporate name to Bayamón Medical Center Corp. The hospital previously known as Hospital Hermanos Meléndez is now known as the Bayamón Medical Center. (Docket No. 11 at 2, ¶ 6). Because the Hospital was named Hospital Hermanos Meléndez during the time the facts of the Complaint occurred, the Court will refer to the hospital as such.
[4] This citation corresponds to the 1930 Puerto Rico Civil Code. The 1930 Puerto Rico Civil Code was abrogated by 31 P.R. Laws Ann. § 5311 et seq. ("2020 Puerto

including Dr. Amparo Flores and Dr. Villamil, breached their duty to comply with the applicable standards of medical care when treating Mrs. Vázquez. Such breach caused brain damage and physical damage to Mrs. Vázquez's person. (Docket No. 1 at 6-7, ¶ 27). Dr. Villamil and Dr. Amparo Flores deny any fault or negligence in their treatment of Mrs. Vázquez. (Docket Nos. 58; and 38).

On September 24, 2020, Dr. Jeffrey S. Freed ("Dr. Freed"), Plaintiffs' expert witness, rendered a report. (Docket No. 242-3). In sum, Dr. Freed concluded that Dr. Torrellas, the other physicians who oversaw Mrs. Vázquez's hospitalization, and the Hospital, deviated from the applicable standards of medical care.

On September 27, 2022, Dr. Villamil filed a *Motion for Summary Judgment and Memorandum in Support*. (Docket No. 239). According to Dr. Villamil, Plaintiffs "are missing expert witness opinions that could establish the allege[d] deviations and negligence from [Dr. Villamil]. . ." (Docket No. 239 at 2). As such, Dr. Villamil concludes that the Complaint should be dismissed as to him as a matter of law.

On October 3, 2022, Dr. Amparo Flores filed a *Motion for Summary Judgment & Legal Memorandum in Support of the Same*. (Docket

---

Rico Civil Code"). However, the 2020 Puerto Rico Civil Code provides that tort liability is governed by the law in force at the time when the act or omission that gave rise to the tort liability took place. *See* 31 P.R. Laws Ann. § 11720. The 1930 Puerto Rico Civil Code was in force when the events that gave rise to this malpractice case occurred.

No. 242). Dr. Amparo Flores argues, as Dr. Villamil does, that Plaintiffs lack the necessary expert testimony to establish that he was negligent and or deviated from the applicable standard of care. (Docket No. 242 at 10). Consequently, the Complaint should be dismissed as to him as a matter of law.

On November 1, 2022, Plaintiffs filed a *Memorandum of Law Opposing Defendants' Motions for Summary Judgment (Docket Nos. 239, 241 & 242)*. (Docket No. 256). Plaintiffs contend that they did present evidence to establish Dr. Villamil's and Dr. Amparo Flores' negligence, and that those Doctors' failure to act amounts to a deviation from the applicable standard of care. (Docket No. 256 at 19-20). Therefore, Plaintiffs argue that the Court should deny Defendants' motions for summary judgment.

## II.  SUMMARY JUDGMENT STANDARD

A.  Fed. R. Civ. P. 56

Fed. R. Civ. P. 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute in a material fact "if the evidence 'is such that a reasonable jury could resolve the point in favor of the non-moving party.'" Taite v. Bridgewater State University, Board of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (*quoting* Ellis

v. Fidelity Management Trust Company, 883 F.3d 1, 7 (1st Cir. 2018)). In turn, a fact is material "if it 'has the potential of affecting the outcome of the case.'" Id. (*quoting* Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)). In making its determination, the Court looks to "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." Johnson v. University of Puerto Rico, 714 F.3d 48, 52 (1st Cir. 2013) (*citing* Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)).

The movant has "the initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact' with definite and competent evidence." Arroyo-Ruiz v. Triple-S Management Group, 258 F.Supp.3d 240, 245 (D.P.R. 2017) (*quoting* Campos v. Van Ness, 711 F.3d 243, 247-48 (1st Cir. 2013)). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which it has the burden of proof, to demonstrate that a trier of fact reasonably could find in its favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)). Indeed, the non-movant is required to "present definite, competent evidence to rebut the motion." Martínez-Rodríguez v. Guevara, 597

F.3d 414, 419 (1st Cir. 2010) (*quoting* Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

Further, the Court must "draw [] all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013). The Court must also refrain from assessing the credibility or weight of the evidence presented. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Facts which are properly supported "shall be deemed admitted unless properly controverted" and the Court is free to ignore such facts that are not properly supported. Local Civ. R. 56(e); Rodríguez-Severino v. UTC Aerospace Sys., No. 20-1901, 2022 WL 15234457, at *5 (1st Cir. Oct. 27, 2022).

B.   Local Civ. R. 56

Local Civ. R. 56 also controls motions for summary judgment. *See* Local Civ. R. 56. In sum, it requires the non-movant to "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civ. R. 56(c). If a fact is not admitted, "the opposing statement shall support each

denial or qualification by a record citation. . ." Id. In its opposing statement, the non-movant can include additional facts supported by record citations. See Id. In turn, the movant "shall submit with its reply a separate, short, and concise statement of material facts, which shall be limited to any additional fact submitted by the opposing party." Local Civ. R. 56(d). In its statement, the movant shall admit, deny, or qualify those additional facts. See Id. Any denial and qualification that the movant raises must be supported by a record citation. See Id.

Failure to comply with Local Rule 56(c) gives the Court the ability to accept a party's proposed facts as stated. See López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023); see also Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted."). Litigants ignore Local Rule 56(c) at their peril. See López-Hernández, 64 F.4th at 26.

### III. FINDINGS OF FACT

The Court examined Dr. Villamil's *Statement of Uncontested Material Facts* (Docket No. 240), Dr. Amparo Flores' *Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* (Docket No. 242-1), *Plaintiff's Opposing Statement of Material Facts with Respect to Statement of Uncontested Material*

*Facts at Docket No. 240* (Docket No. 257), and *Plaintiff's Opposing Statement of Material Facts with Respect to Statement of Uncontested Material Facts in Support of Motion for Summary Judgment at Docket No. 242-1* (Docket No. 259). The Court only credits material facts properly supported by a record citation.

Accordingly, the Court makes the following findings of fact:

1. Mrs. Vázquez was hospitalized from May 3, 2017 to July 3, 2017 at the Hospital. (Docket Nos. 258 at 1-2 ¶ 1; and 293 at 9 ¶ 1).

2. On May 3, 2017, Mrs. Vázquez underwent surgery to remove a hernia that was on the left side of her abdomen. (Docket Nos. 1 at 5 ¶¶ 16, 17, 18; and 259 at 1-2 ¶ 1).

3. On July 3, 2017, Mrs. Vázquez was transferred to the Puerto Rico Medical Center. (Docket Nos. 1 at 6 ¶ 25; and 259 at 2 ¶ 2).

### IV. APPLICABLE LAW

Puerto Rico substantive law applies since this is a diversity action. *See* Roja-Ithier v. Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico, 94 F.3d 40, 43 (1st Cir. 2005) (*citing* Erie R.R. Co. V. Tompkins, 304 U.S. 64, 92 (1938)). It provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 P.R. Laws Ann. § 5141. A plaintiff must establish three elements to prevail in a medical malpractice suit: "(1) the duty owed (i.e., the minimum standard of professional

knowledge and skill required in the relevant circumstances), (2) an act or omission transgressing that duty, and (3) a sufficient causal nexus between the breach and the claimed harm." Cortés-Irizarry, 111 F.3d 184, 189 (1st Cir. 1997) (*citing* Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994); Rolón-Alvarado v. San Juan, 1 F.3d 74,77(1st Cir. 1993)).

"Puerto Rico holds health care professionals to a national standard of care." Rojas-Ithier, 394 F.3d at 43. There is a presumption that physicians exercise reasonable care. *See* Martínez v. United States, 33 F.4th 20, 23 (1st Cir. 2022). As such, a plaintiff "ordinarily must adduce expert testimony to limn the minimum acceptable standard and confirm the defendant doctor's failure to meet it." Id. (*quoting* Cortés-Irizarry 111 F.3d at 190). Without said testimony, "a trier of fact is rarely able to determine the applicable standard of care in the medical profession." Roja-Ithier, 394 F.3d at 43 (*citing* Rolón-Alvarado, 1 F.3d at 78). Likewise, "a factfinder normally cannot find causation without the assistance of expert testimony to clarify complex medical and scientific issues that are more prevalent in medical malpractice cases than in standard negligence case." Id. (*citing* Lama, 16 F.3d at 478).

## V.      ANALYSIS AND CONCLUSION

Foremost, the Court has a truncated record before it. Indeed, the Court does not even have the benefit of Mrs. Vázquez's medical record from her hospitalization at the Hospital Hermanos Meléndez. Of course, the foregoing hinders the Court's ability to rule on Defendants' motions for summary judgment. Nevertheless, after drawing all reasonable inferences in favor of the non-moving party, the Court will not enter summary judgment at this juncture.

On May 3, 2017, Mrs. Vázquez, was admitted to the Hospital. The purpose of her admission was to remove a hernia. Dr. Torrellas performed the surgery. But, following the operation, the surgical site became infected. To treat the infection, Mrs. Vázquez underwent emergency operations on May 17, 2017, and May 23, 2017. The May 2017 operations were performed by some of the defendant doctors and by the Hospital's medical and nursing staff. Unfortunately, Mrs. Vázquez's surgical wound subsequently opened, and fecal matter drained from it, thus creating a fistula.

On June 21, 2017, Mrs. Vázquez underwent surgery again for the placement of a central line for feeding. At this time, Mrs. Vázquez's health was deteriorating, and she showed lapses in consciousness. A CT-scan performed on June 25, 2017 indicated that Mrs. Vázquez could be suffering of encephalopathy. The Hospital and the defendant doctors did not refer Mrs. Vázquez to a

neurologist who could properly evaluate her condition. On July 3, 2017, a week after her CT-scan, Mrs. Vázquez was transferred to the Puerto Rico Medical Center in an emergency condition and with a diagnosis of "Wernicke's Encephalopathy."

At all relevant times, Dr. Villamil and Dr. Amparo Flores were two of the physicians who oversaw Mrs. Vázquez's care and had the opportunity to, among other things, diagnose and treat her before she developed encephalopathy. Their omissions, Plaintiffs sustain, amount to negligence and deviations from the applicable standard of medical care. In that regard, Dr. Freed concluded in his report that:

> Dr. Torrellas <u>nor the hospital staff</u> provided the critical care necessary to prevent further injury. This included but was not limited to the delay in definitive treatment of her peri-colonic abscess secondary to her anastomotic leak, the delay in the treatment of her closed loop small bowel obstruction, and the delayed institution of thyroid medication and thiamine. The failure to provide these therapeutic interventions was below the standard of care for provision of the appropriate consultation, medical and surgical interventions.
>
> <u>Had the physicians and staff met the standard of care for the complications that occurred in Ms. Vazquez's post-operative course, she would not have suffered the additional morbidities that she did, and would not have required extensive surgical and prolonged medical care</u>.

(Docket No. 242-3 at 9) (emphasis supplied). Dr. Freed also concluded that a "[d]elay in diagnosis and treatment of potentially life-threatening conditions is a major cause of morbidity and

mortality in all, but especially in surgical patients." (Id. at 8).

The issue of whether Mrs. Vázquez's damages were caused by Dr. Villamil, Dr. Amparo Flores, other physicians, the Hospital's staff, or a combination of all of them, is one for the jury. The Court will not make that determination today.

In view of the above, the Court **DENIES** Defendants' requests for summary judgment at Docket Nos. 239 and 242.

IT IS SO ORDERED.

In San Juan, Puerto Rico, September 26, 2023.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE