IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Mercedes Vázquez Vázquez and Jose Enrique Diaz Vázquez,<br><br>            Plaintiffs,<br><br>                v.<br><br>Hospital Hermanos Meléndez, Inc., et al.,<br><br>            Defendants. | Civil No. 20-1387 (GMM) |

<u>**OPINION AND ORDER**</u>

Pending before the Court is Defendant Bayamón Medical Center Corp. d/b/a the Bayamón Medical Center's[1] ("Defendant" or "Hospital") *Combined Memorandum of Law and Motion for Summary Judgment* ("Motion for Summary Judgment"). (Docket No. 252). For the following reasons, the Court **DENIES** Defendant's requests for summary judgment.

## I.   RELEVANT BACKGROUND

A.   <u>Underlying Factual Background</u>[2]

On May 3, 2017, Mrs. Mercedes Vázquez Vázquez ("Mrs. Vázquez"), referred by (and only by) Dr. Rafael Torrellas Ruiz

---

[1] The Corporate entity formerly known as Hospital Hermanos Meléndez, Inc. changed its corporate name to Bayamón Medical Center Corp. The hospital previously known as Hospital Hermanos Meléndez is now known as the Bayamón Medical Center. (Docket No. 11 at 2, ¶ 6). Because the Hospital was named Hospital Hermanos Meléndez during the time the facts of the Complaint occurred, the Court will refer to the hospital as such.

[2] The factual allegations in the *Complaint* (Docket No. 1) are taken as true for purposes of this Motion for Summary Judgment.

Civil No. 20-1387(GMM)
Page -2-

("Dr. Torrellas"), was admitted to the Hospital with a diagnosis of colectomy[3] and a hernia on the left side of the abdomen. (Docket No. 1 at 5, ¶ 16).

According to Mrs. Vázquez and her son José Enrique Díaz Vázquez ("Mr. Díaz Vázquez") (together, "Plaintiffs"), the purpose of Mrs. Vázquez's admission to the Hospital was to receive hernia repair surgery. (Id. at 5, ¶ 17). That same day, Dr. Torrellas and other medical and nursing staff at the Hospital conducted the surgery. (Id. at 5, ¶ 18).

Allegedly, due to the fault or negligence of unspecified defendants, the operated area became infected, and Mrs. Vázquez developed an abdominal abscess. (Id. at 5, ¶ 19). Consequently, Mrs. Vázquez underwent emergency surgeries on May 17, 2017, and on May 23, 2017. (Id. at 5, ¶ 20). The surgeries were allegedly conducted by some of the defendant doctors and by the Hospital's medical and nursing staff. (Id.).

On May 26, 2017, Mrs. Vázquez's surgical wound opened and drained fecal matter. (Docket No. 1 at 5, ¶ 21). The drainage created a fistula that prevented medical professionals from carrying out a necessary surgical intervention. (Id.). Mrs. Vázquez was placed on intravenous feeding for two (2) weeks. (Id.).

---

[3] Although the Plaintiffs alleged that Mrs. Vázquez was diagnosed with colectomy, the Court recognizes that a colectomy is a surgical procedure and not a condition.

On June 21, 2017, Mrs. Vázquez underwent surgery –for the fourth time– so that a central feeding line could be placed. (Id. at 5, ¶ 22). At this time, Mrs. Vázquez's health was deteriorating, and she was showing lapses of unconsciousness. (Id.).

On June 25, 2017, a CT-scan of Mrs. Vázquez's brain revealed signs of encephalopathy. (Id. at 5-6, ¶ 23). The Hospital and the defendant doctors did not refer her to a neurologist. (Docket No. 1 at 6, ¶ 23).

Mrs. Vázquez remained hospitalized at the Hospital until July 3, 2017. (Id. at 6, ¶ 24). Allegedly, throughout her hospitalization she was in critical condition due to negligence and deviations from the standards of medical care by all of the defendants named in the Complaint. (Id.).

On July 3, 2017, Mrs. Vázquez was transferred to the Puerto Rico Medical Center in emergency condition. (Id. at 6, ¶ 25). There, she was admitted with a diagnosis of "Wernicke's Encephalopathy." (Id. at 6, ¶ 26). Plaintiffs argue that her condition was the result of all the named defendants' negligence and/or deviations from the standards of medical care. (Id.).

Mrs. Vázquez was discharged from the Puerto Rico Medical Center on August 16, 2017. (Docket No. 1 at 6, ¶ 26). Due to the alleged negligence of all the named defendants, she now reports that she suffers from a plethora of medical complications which limit her basic daily functions. (Id. at 6-7, ¶¶ 27-28).

Civil No. 20-1387(GMM)
Page -4-

Based on the foregoing, on May 3, 2018, Plaintiffs filed a complaint, BY2018CV00177, before the Puerto Rico Court of First Instance of Bayamón ("State Court Complaint"). (Docket No. 45-1). On August 9, 2019, the State Court Complaint was dismissed without prejudice. (Docket No. 52-1).

B.  Procedural Background of this Case

On August 5, 2020, Plaintiffs sued the Hospital; Dr. Torrellas; Dr. Sandra N. Maldonado ("Dr. Maldonado"); Dr. Jesús R. Amparo Flores ("Dr. Amparo Flores"); Dr. John Doe Vázquez ("Dr. Vázquez"), Dr. Vázquez's wife Jane Doe I, and the conjugal partnership between them; Dr. John Doe Ramírez ("Dr. Ramírez"), Dr. Ramírez's wife Jane Doe II, and the conjugal partnership between them; Dr. Salvador Mercado Mercado ("Dr. Mercado"), Dr. Mercado's wife Jane Doe III, and the conjugal partnership between them; Dr. José R. Villamil ("Dr. Villamil"), his wife Jane Doe IV, and the conjugal partnership between them; and other unknown John Does, corporations, and insurance companies. (Docket No. 1 at 2-4).

Plaintiffs claim violations to 31 P.R. Laws Ann. §§ 5141-5142.[4] In sum, they allege that the Hospital and its personnel,

---

[4] This citation corresponds to the 1930 Puerto Rico Civil Code. The 1930 Puerto Rico Civil Code was abrogated by 31 P.R. Laws Ann. § 5311 et seq. ("2020 Puerto Rico Civil Code"). However, the 2020 Puerto Rico Civil Code provides that tort liability is governed by the law in force at the time when the act or omission that gave rise to the tort liability took place. *See* 31 P.R. Laws Ann. § 11720. The 1930 Puerto Rico Civil Code was in force when the events that gave rise to this malpractice case took place.

breached their duty to comply with the applicable standards of medical care when treating Mrs. Vázquez. Such breaches, Plaintiffs claim, caused brain damage and physical damage to Mrs. Vázquez's person. (Docket No. 1 at 6-7, ¶ 27). The Hospital denies any fault or negligence. (Docket No. 11).

On September 24, 2020, Dr. Jeffrey S. Freed ("Dr. Freed"), Plaintiffs' expert witnesses rendered a report. (Docket No. 242-3). In a nutshell, Dr. Freed concludes that Dr. Torrellas, the other physicians who oversaw Mrs. Vázquez's hospitalization, and the Hospital, deviated from the applicable standards of medical care. Dr. Freed was deposed on November 19, 2021.

Dr. Allan Hausknecht ("Dr. Hausknecht"), Plaintiffs' second expert, rendered three different reports. The first report is dated October 8, 2020, and it is titled Comprehensive Neurological Examination. (Docket No. 242-6). The second report is dated October 26, 2020, and it is titled Narrative Report. (Docket No. 242-7). Dr. Hausknecht's third report is dated October 27, 2020, and it is titled Narrative Report as well. (Docket No. 242-8). Dr. Hausknecht was deposed on November 29, 2021.

On October 24, 2022, the Hospital filed its Motion for Summary Judgment. According to the Hospital, "there is no basis for the imposition of tort liability against it under Article 1802 of the Puerto Rico Civil Code." (Docket No. 252 at 1-2). Further, the Hospital argues that it "is not vicariously liable for the acts or

omissions of any of [the] three individual co-defendants who remain
in the case, [Dr. Torrellas], [Dr. Villamil], or [Dr. Amparo
Flores], who are physicians in private practice who have privileges
to practice at [the Hospital], but who are not employees of [the
Hospital]." (Id. at 2). Regarding any liability that could be
imposed to the Hospital due to its staff nurses deviating from the
applicable standard of care, the Hospital argues that Plaintiffs
did not present any expert witness who is qualified to opine about
such deviations. (Id. at 2). Lastly, it is the Hospital's
contention that it cannot be found liable for not having a
neurologist on staff, for failure to consult a neurologist, or for
failure to transfer the patient. (Id. at 16-20). Considering the
above, the Hospital argues that the Court must grant summary
judgment in the Hospital's favor.

On November 17, 2022, Plaintiffs filed a *Memorandum of Law
Opposing Defendant's Motions for Summary Judgment (Docket No.
252).* (Docket No. 270). Therein, Plaintiffs contend that the
Hospital is jointly and severally liable for the malpractice of
the attending medical staff. (Id.). According to Plaintiffs, the
fact that none of the defendant doctors are employees of the
Hospital, is of little importance. (Id. at 12). Dr. Villamil and
Dr. Amparo were doctors appointed by the Hospital to treat Mrs.
Vázquez; they were not Mrs. Vázquez's private doctors. (Id. at
10). In such situations, the District Court for the District of

Civil No. 20-1387(GMM)
Page -7-

Puerto Rico has held that perfect solidarity exists between the doctors and the hospital. (Id.). Insofar as Dr. Torrellas is concerned, Plaintiffs argue that the Hospital is jointly liable for Dr. Torrellas' alleged malpractice since he was, for all times relevant to the Compliant, a member of the Hospital's medical staff. (Docket No. 270 at 14-21).

Plaintiffs further argue that they did present sufficient expert testimony regarding the nurses' negligence to survive a summary judgement motion. Indeed, Dr. Freed testified that the nurses' actions and omissions deviated from the applicable standard of care. (Id. at 23-24).

Likewise, Plaintiffs contend that they presented enough expert testimony to rebut the Hospital's contention that they cannot be found liable for failure to consult a neurologist or transfer Mrs. Vázquez to a hospital with a neurologist on staff. (Id. at 24-25). For the reasons stated above, Plaintiffs request that the Hospital's Motion for Summary Judgment be denied.

On May 12, 2023, the Hospital filed its *Reply to "Plaintiffs' Memorandum of Law Opposing Defendant's Motion for Summary Judgment (Docket No. 252)"* (Docket No. 284). The Hospital reiterates its position that it cannot be found liable for the exclusive negligence of Dr. Torrellas, Dr. Villamil, and Dr. Amparo Flores. (Docket No. 284 at 4-7). Notably, the Hospital sustains that Mrs.

Civil No. 20-1387(GMM)
Page -8-

Vázquez entrusted her medical care to Dr. Torrellas, who was the primary person responsible for her care. (Id.).

As to the Hospital's nurses' alleged negligence, the Hospital argues that the applicable standard of care is a Commonwealth-Wide standard, not a national one. (Id. at 15). Allegedly, Plaintiffs did not bring forth any expert witness who was qualified to testify on such a standard. (Id. at 16).

Lastly, the Hospital posits that it did not deviate from any standard of care by not having a neurologist on its staff, that Dr. Torrellas consulted with a neurologist, and that the Hospital was diligent in transferring Mrs. Vázquez to another hospital. (Id. at 19).

## II.   SUMMARY JUDGMENT STANDARD

A.   Fed. R. Civ. P. 56

Fed. R. Civ. P. 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute in a material fact "if the evidence 'is such that a reasonable jury could resolve the point in favor of the non-moving party.'" Taite v. Bridgewater State University, Board of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (quoting Ellis v. Fidelity Management Trust Company, 883 F.3d 1, 7 (1st Cir. 2018)). In turn, a fact is material "if it 'has the potential of

Civil No. 20-1387(GMM)
Page -9-

affecting the outcome of the case.'" Id. (*quoting* Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)).  In making its determination, the Court will look to "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." Johnson v. University of Puerto Rico, 714 F.3d 48, 52 (1st Cir. 2013) (*citing* Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)).

The movant has "the initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact' with definite and competent evidence." Arroyo-Ruiz v. Triple-S Management Group, 258 F.Supp.3d 240, 245 (D.P.R. 2017) (*quoting* Campos v. Van Ness, 711 F.3d 243, 247-48 (1st Cir. 2013)). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)). Indeed, the non-movant is required to "present definite, competent evidence to rebut the motion." Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (*quoting* Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

Further, the Court must "draw [] all reasonable inferences in favor of the non-moving party while ignoring conclusory

allegations, improbable inferences, and unsupported speculation."
Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013). The Court must
also refrain from assessing the credibility or weight of the
evidence presented. *See* Reeves v. Sanderson Plumbing Products,
Inc., 530 U.S. 133, 135 (2000) ("Credibility determinations, the
weighing of the evidence, and the drawing of legitimate inferences
from the facts are jury functions, not those of a judge."). Facts
which are properly supported "shall be deemed admitted unless
properly controverted" and the Court is free to ignore such facts
that are not properly supported. Local Civ. R. 56(e); Rodríguez-
Severino v. UTC Aerospace Sys., No. 20-1901, 2022 WL 15234457, at
*5 (1st Cir. Oct. 27, 2022).

B.   Local Civ. R. 56

Local Civ. R. 56 also controls motions for summary judgment.
*See* Local Civ. R. 56. In sum, it requires the non-movant to "admit,
deny or qualify the facts supporting the motion for summary
judgment by reference to each numbered paragraph of the moving
party's statement of material facts." Local Civ. R. 56(c). If the
fact is not admitted, "the opposing statement shall support each
denial or qualification by a record citation. . ." Id. In its
opposing statement, the non-movant can include additional facts
supported by record citations. *See* Id. In turn, the movant "shall
submit with its reply a separate, short, and concise statement of
material facts, which shall be limited to any additional fact

Civil No. 20-1387(GMM)
Page -11-

submitted by the opposing party." Local Civ. R. 56(d). In its statement, the movant shall admit, deny, or qualify those additional facts. *See* Id. Any denial and qualification that the movant raises must be supported by a record citation. *See* Id.

Failure to comply with Local Rule 56(c) gives the Court the ability to accept a party's proposed facts as stated. *See* López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023); *see also* Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted."). Litigants ignore Local Rule 56(c) at their peril. *See* López-Hernández, 64 F.4th at 26.

### III. FINDINGS OF FACT

The Court examined the Hospital's *Statement of Uncontested Material Facts in Support of Summary Judgment* (Docket No. 254), *Plaintiffs' Opposing Statement of Material Facts with Respect to Statement of Uncontested Material Facts at Docket No. 254* (Docket No. 271, and the Hospital's *Reply Statement of Material Facts in Support of Summary Judgment Motion* (Docket No. 285). The Court only credits material facts properly supported by a record citation.

Accordingly, the Court makes the following findings of fact:

1.  Hospital Hermanos Meléndez, Inc. was sued as a
    defendant in the Complaint. (Docket Nos. 1 at 1-2
    ¶ 6; and 271 at 2 ¶ 4).

2.  Hospital Hermanos Meléndez, Inc. operated the
    hospital previously known as Hospital Hermanos
    Meléndez, but which is currently named the Bayamón
    Medical Center. (Docket Nos. 254-1 at 1 ¶ 4; and
    271 at 2 ¶ 5).

3.  No corporation with the name Hospital Hermanos
    Meléndez, Inc. presently exists since the corporate
    entity formerly known as Hospital Hermanos
    Meléndez, Inc. changed its name to Bayamón Medical
    Center Corp. in 2018 (Docket Nos. 271 at 3 ¶ 6;
    254-1 at 1 ¶ 4; and 73-1).

4.  Bayamón Medical Center Corp. appeared in this
    action on September 1, 2020 pursuant to a summons
    issued to Hospital Hermanos Meléndez, Inc. and
    which had been served on August 12, 2020. (Docket
    No. 271 at 3 ¶ 7).

5.  Mrs. Vázquez admitted that Dr. Torrellas was her
    personal treating physician. (Docket Nos. 254-2 at
    2 ¶ 4, 4 ¶ 14; and 271 at 4 ¶ 9).

6.  Dr. Torrellas had been Mrs. Vázquez's treating
    physician years prior to his May 3, 2017 surgical
    intervention. Dr. Torrellas had previously done a
    surgery on Mrs. Vázquez at the Hospital for
    diverticulosis in 2011. (Docket No. 271 at 6 ¶ 16).

7.  Dr. Torrellas is a doctor who had privileges with
    the Hospital, which entitled him to admit and treat
    his private patients at the Hospital. (Docket Nos.
    254-1 at 2 ¶ 7; 254-3; 254-4 at 3-4; and 271 at 4
    ¶ 10).

8.  On May 3, 2017, Mrs. Vázquez was admitted to the
    Hospital for an elective surgery of her colon by
    Dr. Torrellas. (Docket Nos. 271 at 5 ¶ 13).

9.  Dr. Villamil is a doctor who had privileges with
    the Hospital, which entitled him to admit and treat

his private patients at the Hospital. (Docket Nos. 254-1 at 2 ¶ 7; and 271 at 8 ¶ 21).

10.   Dr. Amparo Flores is a doctor who had privileges with the Hospital, which entitled him to admit and treat his private patients at the Hospital. (Docket Nos. 254-1 at 2 ¶ 7; and 271 at 8 ¶ 18).

11.   Dr. Freed admitted that he does not consider himself an "expert" on the standard of care for nurses and that although he as been doing expert witness work for close to 35 years, he has never been qualified as an expert witness on a nursing standard of care. (Docket Nos. 254-7 at 31; 254-8 at 6-7; 254-8 at 23).

12.   Dr. Freed stated that he has never practiced as a nurse or been licensed as a nurse in Puerto Rico or anywhere else. (Docket Nos. 254-8 at 7; 271 at 13 ¶ 36).

## IV.   APPLICABLE LAW

This is a diversity action. As such, Puerto Rico substantive law applies since. *See* Roja-Ithier v. Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico, 94 F.3d 40, 43 (1st Cir. 2005) (*citing* Erie R.R. Co. V. Tompkins, 304 U.S. 64, 92 (1938)).

A.   Personal Liability, the Doctrine of Apparent Agency, and Corporate Responsibility

Puerto Rico law provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 P.R. Laws Ann. § 5141. Particularly, to prevail in a medical malpractice suit a plaintiff must establish three elements: "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances), (2) an act or omission transgressing

Civil No. 20-1387(GMM)
Page -14-

that duty, and (3) a sufficient causal nexus between the breach and the claimed harm." Cortés-Irizarry v. Corporación Insular De Seguros, 111 F.3d 184, 189 (1st Cir. 1997) (citing Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994); Rolón-Alvarado v. San Juan, 1 F.3d 74,77(1st Cir. 1993)). Further, "Puerto Rico holds health care professionals to a national standard of care." Rojas-Ithier, 394 F.3d at 43. There is a presumption that physicians exercise reasonable care. See Martínez v. United States, 33 F.4th 20, 23 (1st Cir. 2022).

Generally, under Puerto Rico law, the duty to repair is not limited to damages caused by an individual's own acts. 31 P.R. Laws Ann. § 5142 decrees that the liability imposed by § 5141 "is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible." 31 P.R. Laws Ann. § 5142.

In this sense, Puerto Rico's apparent or ostensible agency doctrine provides that "hospitals and physicians are directly and jointly liable to a victim of malpractice when [the victim] goes directly to a hospital for medical treatment and the hospital 'provides' the physicians who treat him." Suero-Algarín v. CMT Hospital Hima San Pablo Caguas, 957 F.3d 30, 38 (1st Cir. 2020) (quoting Márquez-Vega v. Martínez Rosado, 116 D.P.R. 397, 16 P.R. Offic. Trans. 487, 497 (1985)) (Internal quotations omitted); see also Fonseca v. Hosp. HIMA, 184 D.P.R. 281 (2012) (stating that

Puerto Rico's apparent or ostensible agency doctrine dictates that a hospital is jointly and severally liable for a physician's malpractice if the hospital assigned that physician to the patient). This situation differs from instances when "a person goes directly to a physician's private office, agrees with him as to the treatment he or she is going to receive, and goes to a given hospital on the physician's recommendation merely because said institution is one of several which the physician has the privilege of using. . ." Id. (*quoting* Márquez-Vega, 16 P.R. Offic. Trans. at 497). The key, thus, is "pinpointing who did the patient—first and foremost—entrust with his health: the hospital or the physician." Márquez-Vega, 16 P.R. Offic. Trans. at 496. "[I]t makes no difference whether the attending physician is a hospital employee or not." Id. 16 P.R. Offic. Trans. at 497.

Generally, in cases in which the patient entrusted his or her health to a physician who possessed the privilege of using a hospital's facilities, "the hospital should not be held liable for the exclusive negligence of an unsalaried physician." Márquez-Vega, 16 P.R. Offic. Trans. at 499. This is so because the main relationship is between the patient and the physician, "while the relationship established between the patient and the hospital is of a supplementary and incidental nature." Id. However, under this framework, a hospital is not without responsibility. Indeed

Civil No. 20-1387(GMM)
Page -16-

> public policy dictates that even in this type of
> situation [a] hospital has the *continuous obligation to
> protect the health of* its patients by: (a) carefully
> selecting the physicians who, for some reason or
> another, are granted the privilege of using its
> facilities. . .(b) requiring that said physicians keep
> up-to-date through professional advancement studies. .
> .(c) monitoring the labor of said physicians and taking
> action, when possible, in the face of an obvious act of
> malpractice. . .(d) discontinuing the privilege granted
> in the face of the repeated or crass acts of malpractice
> on the part of one of those physicians. . .and (e)
> keeping reasonably up-to-date on current technological
> breakthroughs.

Id. 16 P.R. Offic. Trans. At 500.

B.   Nursing Staff's Standard of Care

A hospital may also be held responsible for the acts and

omissions of its employee-nurses. *See* 31 P.R. Laws Ann. § 5142

("Owners or directors of an establishment or enterprise are

likewise liable for any damages caused by their employees in the

service of the branches in which the latter are employed or on

account of their duties.").

As to the standard of care owed by nurses, this District has

held that "[a] nurse should exercise a certain standard of

reasonable care to see that no unnecessary harm comes to the

patient and said standard of care must be the same as the standard

of care exercised by other nurses in the locality or similar

localities." Morales v. Monagas, 723 F.Supp.2d 416, 422 (D.P.R.

2010) (*quoting* Blas Toledo v. Hospital Nuestra Señora de la

Guadalupe, 146 D.P.R. 267, 307, slip op. At 21 (1998)); *see also*

Civil No. 20-1387(GMM)
Page -17-

Ramírez v. Corporación del Centro Cardiovascular de Puerto Rico y del Caribe, 32 F.Supp.3d 90, 98 (D.P.R. 2014). Note, however, that the First Circuit recently held that a jury is entitled to credit an expert witness' opinion "that the applicable standards of care in Puerto Rico and the rest of the United States are the same [in regard to nursing]." Rodríguez-Valentín v. Doctors' Center Hospital (Manatí), Inc., 27 F.4th 14, 21 (1st Cir. 2022); see also Correa-Carrillo v. Grupo HIMA San Pablo-Fajardo Inc., 594 F.Supp.3d 414, 421 (D.P.R. 2022) (holding that even though the expert witness was unable to articulate a professional standard of care for nurses that is specific to Puerto Rico, defendant failed to establish how the local standard of care is different in any material respect from the standard of care articulated by the expert witness).

## V.   ANALYSIS

The Hospital's Motion for Summary Judgment encompasses three main arguments: (1) the Hospital is not vicariously liable for the acts or omissions of Dr. Torrellas, Dr. Villamil, or Dr. Amparo Flores; (2) Plaintiffs did not present any expert witness who is qualified to opine about the nurses' deviations from the applicable standard of care; and (3) the Hospital cannot be found liable for not having a neurologist on staff, for failure to consult a neurologist, or for failure to transfer the patient. The Court will discuss each argument in turn.

Civil No. 20-1387(GMM)
Page -18-

A.   <u>The Hospital's Responsibility for the Acts or Omissions of
     Dr. Torrellas, Dr. Villamil, and Dr. Amparo Flores</u>

   1.   <u>Dr. Torrellas</u>

   Based on the factual findings made herein, Dr. Torrellas is

a doctor who had privileges with the Hospital, which entitled him

to admit and treat his private patients at the Hospital.[5] Mrs.

Vázquez is such a patient. Indeed, Dr. Torrellas had begun working

_____

[5] Plaintiffs sustain that Dr. Torrellas should be considered an employee of the
Hospital. (Docket No. 270 at 21). In an attempt to sidestep <u>Márquez-Vega</u>, 16
P.R. Offic. Trans. 487, Plaintiffs take the position that a doctor with
privileges to admit his own private patient to a hospital, should be considered
an employee of said hospital. Plaintiffs thus cite multiple cases, none of which
uphold their position, and the Hospital's By Laws, Rules, and Regulations
(Docket No. 270-1), which do not even specifically mention Dr. Torrellas.

Most of the cases cited by Plaintiffs analyze whether doctors were employees or
independent contractors for the purpose of ascertaining whether said doctors
were immune under Puerto Rico law. <i>See</i> 26 P.R. Laws Ann. § 4105 ("No healthcare
professional (employee or contractor) may be included as a defendant in a civil
action for damages because of culpability or negligence arising from
professional malpractice while said healthcare professional acts in accordance
with his duties and functions, including teaching duties, as an employee of the
Commonwealth of Puerto Rico, its agencies, instrumentalities, the Comprehensive
Cancer Center of the University of Puerto Rico, and the municipalities.").

In any case, the facts contrast starkly from those herein. For example, the
doctors in <u>Rivera v. Hospital Universitario</u>, 762 F.Supp. 15 (D.P.R. 1991) were
<u>medical professors</u> who could not even admit their own private patients without
the hospital's permission. <i>See</i> <u>Rivera</u> 762 F.Supp. at 18. Moreover, "[n]one of
the [doctors'] private practice patients were attended to at the University
Hospital." <u>Id.</u> Lastly, as attending physicians, they were not the doctors of
any single patient. <i>See</i> <u>id.</u> at 16. In <u>Lausell-Archilla v. Huertas-Nieves</u>, 56
F.Supp.2d 163 (D.P.R. 1999) the employer-employee relationship at issue was
between two doctors, rather than between a doctor with privileges and a
hospital. Interestingly, <u>none</u> of the cases cited by Plaintiffs deal with doctors
possessing privileges to admit their private patients to a hospital.

As Plaintiffs concede, Dr. Torrellas is a doctor who had privileges with the
Hospital, which <u>entitled him to admit and treat his private patients at the
Hospital</u>. (Docket No. 271 at 4 ¶ 10). Plaintiffs also concede that Mrs. Vázquez
is such a patient since she was admitted to the Hospital by Dr. Torrellas, <u>her
treating physician</u>, for an elective surgery. (<u>Id.</u> at 5 ¶ 13). In light of the
above, the Court finds Plaintiffs' position as untenable.

as Ms. Vázquez's personal treating physician years prior to his May 3, 2017 surgical intervention in this case.

On May 3, 2017, Dr. Torrellas admitted Mrs. Vázquez to the Hospital for an elective surgery. This is to say, Mrs. Vázquez did not independently go to the hospital to seek treatment. Thus, in the case of Dr. Torrellas, Mrs. Vázquez, and the Hospital, "the main relationship established is between the 'patient' and the physician, while the relationship established between the patient and the hospital is of a supplementary and incidental nature." Márquez-Vega, 16 P.R. Offic. Trans. at 499. Accordingly, the Hospital should not be held liable for Dr. Torrellas' negligence since he was the medical professional first and foremost entrusted with Mrs. Vázquez's health. *See* id.

2. Dr. Villamil and Dr. Amparo Flores

Based on the factual findings made herein, Dr. Villamil and Dr. Amparo Flores are doctors who had privileges with the Hospital, which entitled them to admit and treat their private patients at the Hospital. However, there is no indication in the record that could lead the Court to conclude that Mrs. Vázquez was Dr. Villamil's or Dr. Amparo Flores' private patient. On the contrary, Plaintiffs specifically argue that Mrs. Vázquez "did not choose [Dr. Villamil] or [Dr. Amparo Flores] and they were, in turn, provided by [the Hospital]." (Docket No. 270 at 10). If true, in the case of Dr. Villamil, Dr. Amparo Flores, Mrs. Vázquez, and the

Civil No. 20-1387(GMM)
Page -20-

Hospital, the main relationship established is between Mrs.
Vázquez and the Hospital, since it was the Hospital who assigned
said physicians to her. Because it was the Hospital that provided
Dr. Villamil and Dr. Amparo Flores to Mrs. Vázquez, the Court
cannot conclude that she —first and foremost— entrusted her health
to those physicians. Considering the above, under Puerto Rico's
apparent agency doctrine, the Hospital could be held directly
responsible for Dr. Villamil's and Dr. Amparo Flores' alleged
negligence. *See* Suero-Algarín, 957 F.3d at 38. Thus, the Hospital's
request for summary judgment is denied on this ground.

B.   The Hospital's Nurses' Deviations From the Applicable
     Standard of Care

Based on the factual findings made, it is undisputed that Dr.
Freed does not consider himself an expert in the applicable
standard of care for nurses in Puerto Rico.[6] That being said, he

---

[6] The Hospital does not expressly request that the Court exclude Dr. Freed's
testimony as to the Hospital's nurses' deviations from the applicable standard
of care. However, in their *Reply to "Plaintiffs' Memorandum of Law Opposing
Defendant's Motion for Summary Judgment (Docket No. 252)"* (Docket No. 284) they
argued that the "admissions by plaintiffs' experts at their depositions go to
their qualifications to provide expert witness testimony on the standard of
care governing nurses in Puerto Rico. . .and the reliability of the opinions
they have expressed, and implicates the Court's gate-keeping function under
Daubert to determine whether proffered expert witness testimony should be
excluded."

As it stands, the only argument offered by the Hospital to attack Dr. Freed's
qualifications to provide testimony regarding the standard of care applicable
to nurses, is Dr. Freed's own admission that he does not consider himself a
nursing expert. But, "the *Daubert* gate does not automatically slam shut when an
individual disclaims being an expert, just as a witness's statements that he or
she is an expert do not automatically guarantee that he or she will be allowed
to provide expert testimony." Thomas v. Novartis Pharms. Corp., 443 F. App'x
58, 61 (6th Cir. 2011) (*quoting* Watson v. United States, 485 F.3d 1100, 1106
(10th Cir. 2007).

alleges that he has been practicing medicine for 45 years. (Docket No. 254-8 at 20). With his experience, he determined, that given the facts of this case, the Hospital's nurses deviated from the national standard of care.

Namely, after the elective surgery performed by Dr. Torrellas, Mrs. Vázquez developed severe abdominal pain and began showing signs of drainage from the surgical wound. (Id. at 15). A CT scan was performed, which showed a pelvic abscess. (Id.). To drain the abscess, a Percutaneous drainage was performed. (Id. at 16). Notwithstanding, Mrs. Vázquez kept getting worse. (Id.). According to Dr. Freed, a physician should have expeditiously intervened with the patient. (Id.). In the case of Mrs. Vázquez,

> in spite of the fact that her subsequent CAT Scans after the percutaneous drainage were progressively worse, on each one with more air and more pockets of air and more involvement of tissue, nothing was done until twelve (12) days after the first CAT Scan and fourteen (14) days after the leak on the twenty-fourth (24th) of May.

(Docket No. 254-8 at 16). Dr. Freed posits that the physicians' failure to intervene contributed to Mrs. Vázquez's long-term disability. (Id. at 17).

In the face of a physician who does not act, Dr. Freed expressed that the national standard of care for nurses is as follows:

> if [] a nurse sees a patient getting worse and the doctor [is] doing nothing, she kicks the complaint up the chain. That's what most hospitals do in the country. If that's not the way it is in Puerto Rico, I will yield. But that

Civil No. 20-1387(GMM)
Page -22-

     is the usual standard when nurses see patients getting
     sicker and doctors doing nothing about it.

(Id. at 18). In other words, "[i]f a patient continues to get sick
and the doctor doesn't intervene, nurses are supposed to go and
tell their superiors. . ." (Id.); *see also* (Docket No. 254-9 at 3-
4). Dr. Freed's basis for stating that the national standard of
care applicable to nurses is most likely the same as the Puerto
Rico standard of care, is his experience: "I mean, as I said, I've
been practicing for forty-five (45) years in a variety of venues,
in different administrative positions. And it's never not been the
case. This would be the first time that I was faced with
information that that wasn't the standard." (Id. at 19-20).

     The Hospital did not rebut Dr. Freed's and Plaintiffs'
proposition that the local standard of care is the same as the
national standard of care. Because the Hospital failed to argue
that the local standard of care is different in any material
respect from the standard of care that Dr. Freed is advancing, the
Court denies the Hospital request for summary judgment on this
ground as well.

C.   The Hospital's Deviation from the Standard of Care

     Lastly, the Hospital contends that it cannot be found liable
for not having a neurologist on staff, for failure to consult a
neurologist, or for failure to transfer Mrs. Vázquez to an
institution that had a neurologist. The Court disagrees.

Civil No. 20-1387(GMM)
Page -23-

Dr. Freed testified that in his expert opinion, the Hospital deviated from the applicable standard of care when it did not timely transfer Mrs. Vázquez to another hospital that could provide to her the necessary medical care to treat her emergency neurological condition, i.e., a hospital with a neurologist on staff. (Docket No. 254-8 at 39-43, 48) (testifying that although not having a neurologist on staff is not in and of itself a deviation from the standard of care, if the Hospital does not have a neurologist on staff, then it has to take some additional actions to make sure that a neurologist is consulted or that the patient is transferred to another institution that does have a neurologist).

Taking Dr. Freed's expert testimony into consideration, the Court finds that it is evident that Plaintiffs made a prima facie showing of medical malpractice as it pertains to the Hospital's deviation from the standard of care, showing that there was: (1) a Duty owed: In the face of a neurological emergency, the Hospital must make sure that a neurologist is consulted or that the patient is transferred to another institution that does have a neurologist; (2) an Act or omission transgressing that duty: the Hospital's alleged failure to expeditiously consult a neurologist or transfer the patient to another institution that does have a neurologist; and (3) a Causal nexus between the breach and the claimed harm: had the Hospital given Mrs. Vázquez a formal neurologic consult or

Civil No. 20-1387(GMM)
Page -24-

transferred her to a hospital with a neurologist for proper consultation she would not have manifested the neurologic complications that she suffers from.

Based on the above, the Court denies the Hospital's request for summary judgment on this ground as well.[7]

### VI.   CONCLUSION

In view of the above, the Court **DENIES** the Hospital's request for summary judgment at Docket No. 252.

IT IS SO ORDERED.

In San Juan, Puerto Rico, September 30, 2023.


<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE

---

[7] The Court is aware that the Hospital posits that Dr. Torrellas consulted a neurologist and that it diligently transferred Mrs. Vázquez once her family requested the transfer. These are material facts which have been genuinely disputed. *See, for example,* Docket No. 254-10 at 10-11 (Dr. Hasuknecht explaining what constitutes a consultation and testifying that Dr. Torrellas did not properly consult a neurologist even if a call was made).